# ADDENDUM A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                              No. 07 cr 1166 MCA

ROBERT V. GALLEGOS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *The United States' Motion in Limine Asking That Defendant, Robert Gallegos, Not Be Allowed To Present Evidence, or Argue As A Defense, That He Did Not Know The Navajo Grayware Pots He Purchased Came From Public Land* [Doc. 105], filed May 12, 2008. The Court held a hearing on the motion on May 28, 2008, during the Call of the Calendar for this cause. Having considered the parties' submissions, the relevant law, the arguments of counsel, and otherwise being fully advised in the premises, the Court denies the motion for the reasons set forth more fully below.

## I. BACKGROUND

In the 1950s and 1960s, at a time when they were employed as oil camp workers in the Canyon Largo region near Bloomfield, New Mexico, Larry Moore and Orion Allen amassed a large collection of Navajo grayware pottery from pots, vessels, and jars that they removed from the area. The area where Canyon Largo is situated is known as the "checkerboard" for its mix of private, public, and tribal land.



Defendant Robert Gallegos is a collector and dealer of Native American artifacts. In the summer of 2002, he purchased pottery from the collections of Mr. Moore and Mr. Allen, paying Mr. Moore $10,200 for his pots and Mr. Allen $15,750 for his. Mr. Gallegos thereafter approached the Wheelwright Museum in Santa Fe to inquire about the museum's interest in acquiring his collection. A subsequent investigation by agents with the Bureau of Land Management ("BLM") into the provenance of the pottery ultimately led to Mr. Gallegos's being indicted,[1] on June 13, 2007, on five counts of unlawfully and knowingly selling, purchasing, exchanging, transporting, receiving, and offering to sell, purchase, or exchange archaeological resources[2] with a commercial and archeological value in excess of

---

[1] The Government superseded the indictment on February 27, 2008. Mr. Gallegos is now charged with having unlawfully and knowingly selling, purchasing, exchanging, transporting, receiving, and offering to sell, purchase, or exchange archaeological resources with a commercial and archaeological value in excess of $500.00, "which [resources he] knew to have been removed from public lands . . . without a permit issued under the Antiquities Act of June 8, 1906 (16 U.S.C. § 431-433)." [Doc. 68 at 1-2].

[2] The alleged archaeological resources are described as follows:

Count 1 - a Navajo grayware jar a Navajo grayware jar approximately 32.9 cm in height, inventoried by the BLM as Pot 2, taken from the Canyon Largo area, Global Positioning Satellite (GPS) coordinates N36 degrees, 36.545 minutes, W107 degrees, 40.926 minutes;

Count 2 - a Navajo grayware rounded jar approximately 48.2 cm in height, inventoried by the BLM as Pot 33, taken from the Canyon Largo area, GPS coordinates N36 degrees, 34.587 minutes, W107 degrees, 42.236 minutes;

Count 3 - a Navajo grayware conical vessel with constricted neck approximately 51 cm in height, inventoried by the BLM as Pot 32, taken from the Canyon Largo area, GPS coordinates N36 degrees, 32.077 minutes, W107 degrees, 39.382 minutes;

Count 4 - a Navajo grayware pot approximately 27.2 cm in height, inventoried by the BLM as Pot 8, taken from the Canyon Largo area, GPS coordinates N36

$500.00 without the necessary permit, in violation of 16 U.S.C. § 470ee(b)(2) and (d) and 18 U.S.C. § 2. [Doc. 1]. The area from which the pots were taken by Mr. Moore and Mr. Allen is known to historians and archaeologists as the Dinetah region. It is considered sacred by the Navajo people and also is considered to be their ancestral home.

On May 1, 2008, this Court noticed the matter for a jury trial scheduled to begin on June 10, 2008. In the notice, the Court directed the parties to file any motions in limine by May 12, 2008. On that date, the Government filed the motion in limine that is the subject of this *Opinion*.

## II. ANALYSIS

The Archaeological Resources Protection Act ("ARPA) is codified at 16 U.S.C. §§ 470aa *et seq*. Mr. Gallegos is charged with having violated 16 U.S.C. § 470ee(b)(2), which criminalizes the trafficking in archaeological resources and provides that:

> [n]o person may sell, purchase, exchange, transport, receive, or offer to sell, purchase, or exchange any archaeological resource if such resource was excavated or removed from public lands or Indian lands in violation of . . . any provision, rule, regulation, ordinance, or permit in effect under any other provision of

---

degrees, 26.009 minutes, W107 degrees, 33.745 minutes; and

Count 5 - three (3) Navajo grayware pots, one conical vessel approximately 40.1 cm in height, inventoried by the Bureau of Land Management as Pot 10, one small bowl approximately 10.3 cm in height, inventoried by the Bureau of Land Management as Pot 5, one conical vessel approximately 32.2 cm in height, inventoried by the Bureau of Land Management as Pot 15, all taken from the Canyon Largo area, GPS coordinates N36 degrees, 28.610 minutes, W107 degrees, 32.306 minutes.

3

Federal law.[3]

16 U.S.C. § 470ee(b)(2). Although subsection (d)[4] sets forth a "knowing" mens rea, the parties dispute whether the Government bears the burden of proving that Mr. Gallegos knew both that (1) he was purchasing an archaeological resource; *and* (2) the archaeological resource had been removed from public lands, or just that he knew he was purchasing an archaeological resource.[5]

In United States v. Quarrell, the Tenth Circuit was asked to decide whether "knowingly" extended to each element of an ARPA offense where the defendants argued that the Government was required to prove that they knew they were excavating from public

---

[3] The applicable federal law in this case, as charged in the superseding indictment, is the Antiquities Act of June 8, 1906, 16 U.S.C. § 433.

[4] Subsection (d) provides:

> Any person who knowingly violates, or counsels, procures, solicits, or employs any other person to violate, any prohibition contained in subsection (a), (b), or (c) of this section shall, upon conviction, be fined not more than $10,000 or imprisoned not more than one year, or both: Provided, however, That if the commercial or archaeological value of the archaeological resources involved and the cost of restoration and repair of such resources exceeds the sum of $500, such person shall be fined not more than $20,000 or imprisoned not more than two years, or both. In the case of a second or subsequent such violation upon conviction such person shall be fined not more than $100,000, or imprisoned not more than five years, or both.

16 U.S.C. § 470ee(d).

[5] The superseding indictment, however, charges that the archaeological resources in question are "pots that [Mr.] Gallegos . . . knew to have been removed from public lands without a permit, and which pot[s] had in fact been removed from public lands without a permit issued under the Antiquities Act of June 8, 1906 (16 U.S.C. § 431-433)." [Doc. 68 at 1-2].

4

lands. United States v. Quarrell, 310 F.3d 664, 668 (10th Cir. 2002). The defendants in Quarrell had been arrested for vandalizing an archaeological site in the Gila National Forest in southern New Mexico. Having been found with, among other things, pieces of Mimbres pottery, the defendants stipulated that they (1) were familiar with Mimbres archaeology and art; (2) knew they were digging in a prehistoric Mimbres Pueblo; (3) intended to excavate and remove Mimbres artifacts; and (4) had not received or applied for a permit from the Forest Service to excavate the site. The Quarrell defendants were convicted of having violated the ARPA. Id. at 669.

Importantly, however, the Quarrell defendants were charged with having violated subsection (a) of 16 U.S.C. § 470ee.[6] Addressing an issue of first impression, the Tenth Circuit held that the Government need not prove as an element of the offense that a defendant charged with violating subsection (a) knew he was on public lands. Quarrell, 310 F.3d 664, 674. The defendants in Quarrell attempted to rely on Staples v. United States, 511 U.S. 600 (1994) (prosecution for possession of unregistered firearm) and United States v. X-Citement

---

[6] Subsection (a) provides that

> [n]o person may excavate, remove, damage, or otherwise alter or deface, or attempt to excavate, remove, damage, or otherwise alter or deface any archaeological resource located on public lands or Indian lands unless such activity is pursuant to a permit issued under section 470cc of this title, a permit referred to in section 470cc(h)(2) of this title, or the exemption contained in section 470cc(g)(1) of this title.

16 U.S.C. § 470ee(a). As previously explained, Mr. Gallegos is charged with having violated subsection (b)(2).

5

Video, Inc., 513 U.S. 64 (1994) (prosecution for knowingly transporting, shipping, receiving or distributing visual depiction of minor engaging in sexually explicit conduct) for the proposition that the Government was required to prove that they knew they were excavating on public lands, but the Circuit distinguished both cases, explaining that

> [u]nlike a citizen owning a firearm unaware of its automatic firing capabilities, or a distributor of sexually-explicit materials unaware of the age of its performers, *a person excavating on someone else's land, whether public or private, cannot reasonably expect to be free from regulation.* In Staples, the Court opined that because of the long tradition of lawful gun ownership, gun owners are not sufficiently on notice of the likelihood of regulation to warrant dispensing with the scienter requirement.... Excavating for archaeological resources has not enjoyed a similar tradition.

Id. at 672 (emphasis added). To put it another way, for Staples and X-Citement Video to have dispensed with a mens rea requirement "would [have] criminalize[d] a broad range of apparently innocent conduct." Id. at 671. By contrast, because one generally is not entitled to enter another's land and remove items he finds there, Quarrell held that the fact that an archaeological resource was removed from public lands was "best described as a jurisdictional element[,]" id. at 674, at least where the indictment charges a violation of 16 U.S.C. § 470ee(a), which criminalizes the actual excavation and/or removal. Looking to the Ninth Circuit, Quarrel concluded that what the Government is required to prove with respect to knowledge is that "a person charged under ARPA knew, or at least had reason to know, that the object taken is an 'archeological resource.'" United States v. Lynch, 233 F.3d 1139,

6

1143 (9th Cir. 2000).[7]

Notwithstanding that Mr. Gallegos, like the Quarrell defendants, has been charged with violations of the ARPA, this Court deems subsections (a) and (b) sufficiently dissimilar to support distinguishing Quarrell under the unique circumstances presented here. Consequently, the Court concludes that, *as a buyer/seller and not the actual remover of the pottery in question*, Mr. Gallegos situation is more akin to the facts of Staples and X-Citement Video, because to eliminate the requirement that the Government prove that he knew or should have known that he was purchasing illegally removed pottery would "criminalize a broad range of apparently innocent conduct," Staples, 511 U.S. at 610, specifically, buying and selling pottery readily available on the open market. Quarrell was "not a situation involving a need to apply a mens era requirement to 'each of the statutory elements that criminalize[d] otherwise innocent conduct[,]'" Quarrell, 310 F.3d at 672 (*quoting* X-Citement Video, 513 U.S. at 72), because, again, there generally is no right to go upon another's land, without permission, and take valuable objects found thereon. By contrast, since "guns generally can be owned in perfect innocence," Staples, 511 U.S. at 610, an element of the offense[8] in Staples was that the defendant have known that the weapon he

---

[7] The same problem that confronted the Ninth Circuit in Lynch exists here: a lack of case law or other guiding authority as to the precise issue presented. See Lynch, 233 F.3d at 1140 ("We have examined the limited judicial authority we have found on the criminal liability of one who is charged with a knowing violation of a statute denouncing as a crime the removal of an 'archeological resource. . . .'").

[8] 26 U.S.C. § 5861(d) (making it "unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record. . . .").

7

possessed had automatic firing features bringing it within the scope of the National Firearms Act. Similarly, because it is not unlawful to buy and sell sexually explicit materials involving adults, X-Citement Video held that, in order to secure a conviction under the Protection of Children Against Sexual Exploitation Act of 1977, the Government must show that the defendant knew that pornographic videos he sold depicted a minor, since "the age of the performers is the crucial element separating legal innocence from wrongful conduct." X-Citement Video, 513 U.S. at 72.

In other words, absent the defendant's knowledge that the weapon he possessed had automatic firing capabilities (Staples), and absent the defendant's knowledge that the videos he sold depicted a minor engaged in sexually explicit conduct (X-Citement Video), the defendants in those cases would not have been engaged in criminal conduct. By contrast, the defendants in Quarrell knew they were excavating on land that did not belong to them, just as the defendants in United States v. Spier knew that they were stealing when they cut down Christmas trees from a national forest, even though they may not have known they were taking United States property (thus relieving the Government of the burden of proving that the defendants' knowledge of government ownership).[9] United States v. Spier, 564 F.2d 934, 938 (10th Cir. 1977)

The critical point that this Court believes distinguishes Quarrell (which, again,

---

[9] Similarly, because the defendants in United States v. Feola would have known that knew that assault was wrongful, the Government was not required to prove that they knew they were assaulting undercover federal agents in order to secure a conviction under 18 U.S.C. § 111 (assault upon a federal officer or employee). United States v. Feola, 420 U.S. 671, 685 (1975).

addressed only subsection (a) of the statute) from the instant situation is that Mr. Gallegos, as the individual who bought pottery from the ones who allegedly unlawfully took it many decades before, is at least one degree removed from the original wrongful conduct that, in turn, would place his own conduct in violation of the ARPA. Unlike the defendants in Quarrell, Mr. Gallegos did not commit the independently wrongful act of excavating without a permit. Instead, he committed what this Court believes would be—in the absence of proof that he knew or should have known that the grayware had been unlawfully excavated or removed from public lands—the otherwise legal act of buying pottery. Had Mr. Moore and Mr. Allen lawfully removed the grayware pottery from Canyon Largo, their possession, as well as Mr. Gallegos's subsequent purchase of it, would be rightful, since not every purchase of pottery (even pottery legally defined as an "archaeological resource") amounts to a criminal act. Given that, it makes sense to this Court to require the Government to prove that Mr. Gallegos knew or should have known that the pots he was purchasing were removed from public lands, in violation of the Antiquities Act of June 8, 1906. To read the "knowing" requirement out of the "removed from public lands" element of 16 U.S.C. § 470ee(b) would, in the Court's opinion, criminalize a broad range of apparently innocent conduct. See Staples, 511 U.S. at 610.[10]

---

[10] The Court returns to a question it posed both at the May 28, 2008 Call of the Calendar/Motion in Limine hearing, and the hearing it held on April 23, 2008 for the purpose of considering Mr. Gallegos's motions to dismiss the indictment, which is what effect, if any, does the passage of time have on the Government's burden of proof? As much as half a century may have passed between the actual removal of the Navajo grayware charged in this case and Mr. Gallegos's purchase. While the Government bears the burden of proving in prosecutions brought pursuant to 16 U.S.C. § 470ee(b) that the defendant knew or should have known that the

9

In light of the Court's conclusion that the Government must prove that Mr. Gallegos knew or should have known that the pottery in question had been removed from public lands in violation of the Antiquities Act of June 8, 1906, the Court also concludes that Mr. Gallegos should be allowed to present as a defense that he reasonably and honestly believed the pottery to have been lawfully removed from Canyon Largo, since "such 'an honest mistake of fact would not be consistent with criminal intent.'" Quarrell, 310 F.3d at 675 (*quoting* Feola, 420 U.S. at 686)). Accordingly, the Government's motion in limine seeking to preclude such a defense will be denied. As always, this pretrial evidentiary ruling is subject to reconsideration in the event that unforeseen circumstances or a change in context should arise during the trial.

### III. CONCLUSION

For the foregoing reasons, *The United States' Motion in Limine Asking That Defendant, Robert Gallegos, Not Be Allowed To Present Evidence, or Argue As A Defense, That He Did Not Know The Navajo Grayware Pots He Purchased Came From Public Land* is denied.

**IT IS, THEREFORE, ORDERED** that *The United States' Motion in Limine Asking That Defendant, Robert Gallegos, Not Be Allowed To Present Evidence, or Argue As A Defense, That He Did Not Know The Navajo Grayware Pots He Purchased Came From Public Land* [Doc. 105] is **DENIED**.

---

archaeological resource at issue was removed from public lands, whether removed 1 week or 50 years prior to its later purchase or exchange, a defendant's *ability even to know* from where the resource came takes on even greater import with the passage of time.

**SO ORDERED** this 30th day of May, 2008, in Albuquerque, New Mexico.

*[signature]*
M. CHRISTINA ARMIJO
United States District Judge