CARLIE CHRISTENSEN, Acting United States Attorney (#633)
RICHARD D. McKELVIE, Assistant United States Attorney (#2205)
Attorneys for the United States of America
185 South State Street
Salt Lake City, Utah 84111
Telephone:  (801) 524-5682

_____

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | 2:09-CR-290 DAK |
| Plaintiff, | : | |
| | : | RESPONSE TO DEFENDANT'S |
| vs. | : | MOTION FOR JURY INSTRUCTION |
| | | OR, AS ALTERNATIVES, TO |
| DAVID WAITE, | : | DISMISS THE INDICTMENT OR |
| | | DECLARE STATUTE |
| Defendant. | : | UNCONSTITUTIONAL |
| | : | Judge Dale A. Kimball |

_____

The United States, by and through the undersigned Assistant United States Attorney, responds to the above-captioned motion as follows:

A.  PROCEDURAL HISTORY

Defendant David Waite was indicted by a grand jury in a three-count indictment alleging violations of the Archeological Resources Protection act (ARPA), 16 U.S.C. § 470ee, Interstate Transportation of Stolen Property, 18 U.S.C. §2314 and Theft of Government Property, 18 U.S.C. §641.  The indictment resulted from a two year investigation conducted by the Federal

Bureau of Investigation and the Bureau of Land Management targeting traffickers of illegally obtained Native American cultural artifacts.

Defendant has moved the court to instruct the jury with respect to issues of knowledge and intent or, as alternatives, to dismiss the indictment because of defects in the grand jury presentation, or declare the ARPA statute unconstitutional.

Defendant's memorandum in support of his motion is directed solely to the count of the indictment which implicates ARPA (Count 1 of the indictment.) Presumably, therefore, he does not challenge Counts 2 or 3 of the Indictment, nor does he seek any specific jury instruction regarding those counts. This memorandum, then, will address defendant's arguments only as they relate to Count 1 of the Indictment.

B.  ARGUMENT

The government will present its argument in a slightly different order than that proposed by defendant, for purposes of context and continuity. In summary, the government contends that the ARPA statute is constitutional, that the indictment is valid and the grand jury proceedings were proper, and that a determination of the propriety of a special jury instruction must be made only after the court has heard the evidence at trial.

1.  <u>ARPA is constitutional</u>

Defendant challenges the constitutionality of ARPA claiming that ARPA contains no knowledge requirement, which thereby renders the statute a strict liability offense. A review of the statute itself and interpretive case law establishes that there is a knowledge requirement.

ARPA states, in parts relevant to this indictment:

<u>(a) Unauthorized excavation, removal, damage, alteration, or defacement of archaeological</u>

<u>resources</u>

No person may excavate, remove, damage, or otherwise alter or deface, or attempt to excavate, remove, damage, or otherwise alter or deface any archaeological resource located on public lands or Indian lands unless such activity is pursuant to a permit issued under section 470cc of this title, a permit referred to in section 470cc(h)(2) of this title, or the exemption contained in section 470cc(g)(1) of this title.

<u>(b) Trafficking in archaeological resources the excavation or removal of which was wrongful under Federal law</u>

No person may sell, purchase, exchange, transport, receive, or offer to sell, purchase, or exchange any archaeological resource if such resource was excavated or removed from public lands or Indian lands in violation of--

(1) the prohibition contained in subsection (a) of this section, or

(2) any provision, rule, regulation, ordinance, or permit in effect under any other provision of Federal law.
....

Any person who <u>knowingly</u> violates, or counsels, procures, solicits, or employs any other person to violate, any prohibition contained in subsection (a), (b), or (c) of this section shall, upon conviction, be fined not more than $10,000 or imprisoned not more than one year, or both: Provided, however, That if the commercial or archaeological value of the archaeological resources involved and the cost of restoration and repair of such resources exceeds the sum of $500, such person shall be fined not more than $20,000 or imprisoned not more than two years, or both. In the case of a second or subsequent such violation upon conviction such person shall be fined not more than $100,000, or imprisoned not more than five years, or both.

(16 U.S.C. § 470ee) (Emphasis supplied)

A plain reading of the statute reveals that punishment can be imposed only for a knowing violation of the statute. The government agrees that the jury would need to be instructed that defendant acted knowingly in order to establish a violation under ARPA.

The question then becomes, what must the defendant know? In *U.S. v. Quarrell,* 310

F.3d 664 (10th Cir. 2002), James Quarrell, his brother Michael Quarrell, and their cousin, Aaron Sera, were arrested for vandalizing an archaeological site in the Gila National Forest in southern New Mexico. Officers found the Quarrells and Sera excavating the site. Among their possessions were backpacks and sleeping bags, a specialized probe used to determine the alignment of rock walls, shovels, a firearm, and pieces of Mimbres pottery.

The Quarrells stipulated that they were familiar with Mimbres archaeology and art; they knew they were digging in a prehistoric Mimbres Pueblo; they intended to excavate and remove Mimbres artifacts; and they had not received or applied for a permit from the Forest Service to excavate the site.

The Quarrells contend the district court erred in its reading of ARPA because it did not require the government to prove the Quarrells knew they were excavating on public land. The government contended that if it is required to show a defendant knew that he or she was on public land under subsection (a), it follows that the government would be required to establish knowledge of the interstate or foreign commerce element in subsection (c). However, establishing a defendant's knowledge of the interstate or foreign commerce element is generally not required.

Defendants cited *Staples v. United States,* 511 U.S. 600 (1994), relied on also by defendant Waite, to support their argument that the government must prove knowledge as to each element of the offense, including knowledge that the offense occurred on federal public lands. Defendants also relied on the 9th Circuit decision in *United States v. Lynch*, 233 F.3d 1139 (9th Cir. 2000). The *Lynch* court overturned the conviction of a defendant who was charged under ARPA after he sold a prehistoric skull he had discovered in a cave while hunting on federal lands

in Alaska. Using the reasoning of *Staples* and *Unites States v. X-citement Video, Inc.*, 513 U.S. 64 (1994), the *Lynch* court determined that the United States must prove the defendant knew that the skull met the definition of an "archeological resource" as defined by the statute. The *Lynch* court did <u>not</u>, however, rule that the United States must prove that defendant knew that taking an archeological resource from federal lands was a violation of federal law.

The *Quarrell* court distinguished the case from *Lynch*, utilizing the following reasoning:

> Requiring a defendant to know the object he is removing is an archaeological resource protects against convicting the casual visitor, like a Boy Scout, who picks up an object unaware that it is a prehistoric artifact. It is unclear, however, how requiring a defendant to know the status of the land he is excavating will further Congress' desire to avoid punishing the casual visitor or prevent punishing otherwise innocent conduct. The Quarrells, unlike the casual visitor, knew they were excavating and knew they were removing valuable archaeological resources from the land. This is precisely the activity Congress intended to prevent and punish when it enacted ARPA.

310 F.3d at 673.

The court went on to say:

> The present case is analogous to a line of precedent starting with *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975). In *Feola*, the Court held that the government was not required to prove that the defendants knew the undercover agents they assaulted were federal officers in order to be convicted under 18 U.S.C. § 111. Id. at 684, 95 S.Ct. 1255. The Court reasoned:
>
> This interpretation poses no risk of unfairness to defendants. It is no snare for the unsuspecting. Although the perpetrator of a narcotics 'rip-off,' such as the one involved here, may be surprised to find that his intended victim is a federal officer in civilian apparel, he nonetheless knows from the very outset that his planned course of conduct is wrongful. The situation is not one where legitimate conduct becomes unlawful solely because of the identity of the individual or agency affected. In a case of this kind the offender takes his victim as he finds him. The concept of criminal intent does not extend so far as to require that the actor understand not only the nature of his act but also its consequence for the choice of a judicial forum.

In summary, the statute provides for proof of knowledge, but not the knowledge burden

that defendant seeks to place on the government. Under the reasoning of both *Quarrell* and *Lynch*, the United States must prove that defendant knew that the items he allegedly sold had the characteristics of an "archeological resource" as defined by the statute.[1] The United States need not prove, however, that defendant knew that his conduct was violative of ARPA or any other law.

The indictment alleges, with respect to the same archeological artifacts as charged in the ARPA counts, that defendant committed the offenses of Transportation of Stolen Property and Theft of Government Property. These statutes both carry their own intent requirements. It is clear from the indictment and the applicable case law that the government must prove that defendant knew the items were stolen, and that they were archeological resources. Under the clear holding of *Quarrell*, the government need not prove from whom the artifacts were stolen, nor that his conduct was a violation of ARPA or any other specific statute of the United States.

2. The Grand Jury proceedings and the indictment are sufficient

Defendant asserts that "the government failed to establish a crime both before the grand jury and in the indictment when it failed to specify whether Mr. Waite knew that the artifacts

---

[1] 16 U.S.C. § 470bb(1) defines "archeological resource as "any material remains of past human life or activities which are of archaeological interest, as determined under uniform regulations promulgated pursuant to this chapter. Such regulations containing such determination shall include, but not be limited to: pottery, basketry, bottles, weapons, weapon projectiles, tools, structures or portions of structures, pit houses, rock paintings, rock carvings, intaglios, graves, human skeletal materials, or any portion or piece of any of the foregoing items. Nonfossilized and fossilized paleontological specimens, or any portion or piece thereof, shall not be considered archaeological resources, under the regulations under this paragraph, unless found in an archaeological context. No item shall be treated as an archaeological resource under regulations under this paragraph unless such item is at least 100 years of age."

were protected." Defendant's brief, p. 8.

As established above, Mr. Waite's knowledge that the artifacts were protected by statute, whether ARPA or otherwise, is not an element of the offense. As indicated in *Quarrell*, the knowledge requirement is satisfied if the government establishes that defendant knew that the items he sold or possessed bore the characteristics of an archeological resource and that he possessed them unlawfully. As was the reasoning in *Quarrell*, it is of no consequence whether defendant knew specifically from whom the artifacts had been illegally taken. The companion allegations of Theft of Government Property and Interstate Transportation of Stolen Property related to the same artifacts should make it abundantly clear that the United States intends to prove, and provided such proof before the grand jury, that the artifacts were in fact property of the United States and that defendant knew that he did not possess them lawfully. Such proof meets the requirements of both the validity of the indictment and the propriety of the grand jury proceedings.

It should be noted that the transcripts of the grand jury proceedings have not yet been unsealed or provided to defendant, so his argument relating to the grand jury proceedings must be based upon speculation. In absence of evidence to the contrary, the grand jury proceedings are presumed proper, and the indictment is valid so long as it carries the necessary elements of the offense. In *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006) the court stated:

> An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir.1997). Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence. *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir.1994). Rather, "[a]n indictment should be tested solely on the basis of the allegations made on its face, and such

allegations are to be taken as true." Id. See also United States v. Sampson, 371 U.S. 75, 78-79, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962) (finding it irrelevant that charges had not been established by evidence, because at a motion to dismiss "the indictment must be tested by its sufficiency to charge an offense"). Courts should therefore avoid considering evidence outside the indictment when testing the indictment's legal sufficiency. *Hall*, 20 F.3d at 1087.

The indictment in this case is facially valid because it alleges all of the necessary elements of each offense, puts the defendant on notice of the charges against him, and protects him from potential double jeopardy. The indictment complies with Rule 7(c)(1) of the Federal Rules of Criminal Procedure, which requires that an indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged."

3. <u>Defendant is entitled to a specific jury instruction only if the evidence established in trial warrants one.</u>

A defendant in a criminal case is entitled to a specific jury instruction if the instruction accurately states the law and evidence has been introduced at trial that will factually support the jury instruction. *United States v. Pack*, 773 F.2d 261 (10th Cir.1985): ("Although a criminal defendant is entitled to an instruction regarding his theory of the case, a trial judge is given substantial latitude and discretion in tailoring and formulating the instructions so long as they are correct statements of law and fairly and adequately cover the issues presented." )

Failing to instruct the jury with respect to specific intent is not error so long as the jury instructions as a whole fairly and accurately instruct the jury as to the law and the standards they are to apply. In *United States v. Winchell*, 129 F.3d 1093 (10th Cir. 1997) the defendant complained of the district court's refusal to instruct the jury on "specific intent" in a tax evasion case. In rejecting defendant's claim, the court stated:

We review de novo a timely challenge to a jury instruction to determine whether, considering the instructions as a whole, the jury was misled. *United States v. Smith*, 13 F.3d 1421, 1424 (10th Cir.1994). If, as a whole, the instructions correctly state the law and provide the jury with an "intelligent, meaningful understanding of the applicable issues and standards," we will not reverse. *United States v. Laughlin*, 26 F.3d 1523, 1528 (10th Cir.1994). In other words, reversal is not appropriate unless we have "substantial doubt that the jury was fairly guided." *United States v. Mullins*, 4 F.3d 898, 900 (10th Cir.1993).

In the context of criminal violations of federal tax statutes, the Supreme Court has recognized the "pervasive intent of Congress to construct penalties that separate the purposeful tax violator from the well meaning, but easily confused, mass of taxpayers." *United States v. Bishop*, 412 U.S. 346, 360, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973). Thus, as applied in the Internal Revenue Code, the Supreme Court has "consistent[ly] interpret[ed] the word 'willfully' to require an element of mens rea." Id. Defining that mens rea, the Supreme Court has explained, for purposes of establishing violations of tax laws, its cases "conclusively establish that the standard for the statutory willfulness requirement is the 'voluntary, intentional violation of a known legal duty.'" *Cheek v. United States*, 498 U.S. 192, 201, 111 S.Ct. 604, 610, 112 L.Ed.2d 617 (1991) (quoting Bishop, 412 U.S. at 361, 93 S.Ct. at 2017-18, and *United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 23-24, 50 L.Ed.2d 12 (1976) (per curiam)).

Accordingly, Winchell is correct insofar as he asserts that § 7206(1) establishes a "specific intent" crime. See *United States v. Erickson*, 676 F.2d 408, 410 n. 4 (10th Cir.1982) (listing § 7206, among other Internal Revenue Code sections, and stating that "[a]ll of these statutory provisions are specific intent crimes, i.e., willfulness is an element of each"). However, as we have previously noted, "instructing in terms of 'specific intent' has been disfavored by the courts because of the confusing and ambiguous nature of such an instruction." *Laughlin*, 26 F.3d at 1527 (citing *Liparota v. United States*, 471 U.S. 419, 433 n. 16, 105 S.Ct. 2084, 2093 n. 16, 85 L.Ed.2d 434 (1985) ). Instead, we have endorsed instructions which adequately "apprise the jury of the mens rea element of the offense," id. at 1527, and which "define each element of the offense clearly and accurately." Id. at 1528. In this case, the word "willfully" describes the requisite mens rea. Accordingly, the court adequately instructed the jury when it defined "willfully" using the conclusively established standard, and we find no error in its refusal to give a separate specific intent instruction.

*Winchell* at 1096-97.

The *Winchell* case is instructive in this case. As argued above, the United States takes the

9

position that the government need not prove defendant had specific knowledge that his conduct violated ARPA. Rather, a conviction may be sustained if the jury finds that defendant knowingly sold an archaeological resource, and that the archeological resource was excavated or removed from public lands owned and administered by the United States.

DATED this 18th day of June, 2010.

CARLIE CHRISTENSEN
Acting United States Attorney


*/s/ Richard D. McKelvie*
RICHARD D. McKELVIE
Assistant United States Attorney